IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 09-03029-01-CR-S-RED |
| | ) | |
| NEIL SCOTT KRAMER, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

COMES NOW Defendant, Neil Scott Kramer, and respectfully moves the Court to enter a judgment sentencing him to no more than 140 months in prison, a sentence no longer than the low-end of what Mr. Kramer believes to be the properly calculated Guidelines range. Mr. Kramer contends that a sentence of no more than 140 months is sufficient, but not greater than necessary to accomplish the goals of the sentencing factors enumerated in 18 U.S.C. § 3553(a). In support of his motion, Mr. Kramer offers the following suggestions.

**SUGGESTIONS**

The Court is required to impose a sentence sufficient, but not greater than necessary to comply with the purposes set out in 18 U.S.C. § 3553(a)(1) - (7). *See* 18 U.S.C. § 3553(a). Specifically, when fashioning a sentence, the Court is required to consider:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The need for the sentence imposed –

1

      a.      To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      b.      To afford adequate deterrence to criminal conduct;

      c.      To protect the public from further crimes of the defendant; and

      d.      To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The kinds of sentence and the [United States Sentencing Guidelines sentencing range];

5. Any pertinent policy statement [of the United States Sentencing Commission];

6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

In Mr. Kramer's case, the Court is required to sentence within the statutory sentencing range of not less than ten years (120 months). *See* 18 U.S.C. § 2423(a). Probation is not a sentencing option because Mr. Kramer pleaded guilty to a class A felony. *See* 18 U.S.C. § 3561(a)(1). The Court must first properly calculate the advisory Guidelines sentencing range and then consider the remaining § 3553(a) factors in order to fashion a sentence sufficient but not greater than necessary to comply with the factors. *See Gall v. United States*, 128 S.Ct. 596 (2007).

### ***The Properly Calculated Advisory Guidelines Sentence***

In Mr. Kramer's presentence investigation report, the United State Probation Officer calculated the advisory Guidelines sentencing range. The probation officer concluded that Mr. Kramer's offense level is 29, his criminal history category is V and the resulting sentencing range is 140 - 175 months. *See* PSR ¶ 72. Mr. Kramer has no objections to this Guidelines calculation and believes that it is properly calculated.

The Government, however, objects to the offense level calculation arguing that an additional two points should be added pursuant to U.S.S.G. § 2G1.3(b)(3) because it contends that Mr. Kramer's use of a cell phone to entice the victim constitutes use of a "computer," under the definition of "computer" provided in 18 U.S.C. § 1030(e)(1). *See* PSR Addendum. Under application note one, a "computer" is defined by § 1030(e)(1) as:

> [A]n electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or similar device.

To support its position that Mr. Kramer's cell phone is a computer for the purposes of § 2G1.3(b)(3), the Government does not provide the opinion of an expert regarding the issue, but instead relies on a footnote in a reported district court decision clarifying that the parties in a civil cause of action agreed that the cell phones at issue in the case met the definition of a computer under § 1030(e)(1). *See* PSR Addendum and *Czech v. Wall Street on Demand, Inc.*, 2009 WL 4729881, 17 n.5 (D. Minn. 2009).

3

Mr. Kramer disagrees with the Government's position regarding the application of the two-point offense level enhancement for multiple reasons.  First, the Government's position that Mr. Kramer's cell phone meets the definition of a computer is not supported by any evidence, such as the opinion of a technical expert.  Mr. Kramer contends that such evidence is necessary for the Government to attempt to meet its preponderance-of-the-evidence burden of proof.  *See e.g. United States v. Bledsoe*, 445 F.3d 1069, 1072 (8th Cir. 2006)(finding that where the Government sought an offense level enhancement for obstruction of justice pursuant to § 3C1.1, it was required to prove that the defendant's actions met the legal standard set out in the application note) *and United States v. Molina-Perez*, 595 F3.d 854, 862-863 (8th Cir. 2010)(stating that the Government must prove the elements of a Guidelines enhancement by the preponderance of the evidence).

Second, the legal authority cited by the Government to support its position is not controlling.  The Court should not consider persuasive the Government's reliance on the agreement of parties in a civil case, as recited in a footnote in a reported district court case, because the agreements of civil litigants regarding how the law applies to case-specific facts are not established rules of law.  Further, in the only reported appellate case in which the phrase "mobile phone" or "cell phone" is mentioned in the context of § 2G1.3(b)(3) analysis, the Sixth Circuit implicitly distinguishes a mobile phone from a computer when applying the two-point enhancement pursuant to § 2G1.3(b)(3).  *See generally United States v. Lay*, 583 F.3d 436 (6th Cir. 2009).

In *Lay*, the Sixth Circuit considered whether the two-point enhancement of § 2G1.3(b)(3) applied in a case where the defendant used a computer and an internet chat room to start an

4

online friendship with a minor victim, but did not use the computer to communicate his illicit intentions, choosing instead to communicate his intent to engage in illicit sexual contact using a mobile phone that he provided to the victim as a gift. *See Lay* at 447. The defendant argued that the two-point enhancement should not apply because the evidence showed that none of the communications about sexual conduct had occurred via computer. *See Lay* at 443. The Sixth Circuit disagreed, finding the two-point enhancement applied, even though the defendant did not send specific sexual requests by computer, because the defendant used a computer to initially develop a what became an illicit relationship with his minor victim. *Lay* at 447.

Although not squarely addressing whether a mobile phone or cell phone is a computer under § 1030(e)(1), in reaching its decision, the Sixth Circuit implicitly distinguished one from the other. The Court wrote:

> Lay admitted to communicating with M.V. by computer for about two months, and the district court did not find Lay's attempts to minimize the significance of his computer communications credible. Moreover, the computer communication ceased only at the time Lay began plying M.V. with gifts, including the phone that replaced the computer as a means of communication.

*See Lay* at 447. Additionally, the Court wrote:

> To allow a predator to use a computer to develop relationships with minor victims, so long as the ultimate consummation is first proposed through offline communication, would not serve the purpose of the enhancement. The computer-provided threat of anonymous one-to-many communications by a sexual predator exists whether the predator uses the Internet to make explicit proposals of sexual

5

activity or merely to strike up friendships with potential victims. Either course allows the predator to contact more potential victims, and to make initial contacts more insidiously, than would be possible offline. Application of the enhancement in this case was there warranted.

*Id.* Implicit in the Court's reasoning is the conclusion that communication using a computer is inherently different from communication using a mobile phone.

Third, Mr. Kramer contends that his ordinary cell phone is not a computer because it should be considered as a device similar to the ordinary devices excluded as a computer under the definition provided in § 1030(e)(1). Excluded from the definition of a computer are "an automated typewriter or typesetter, a portable handheld calculator, or similar device." *See* § 1030(e)(1). Mr. Kramer contends that his ordinary cell phone is to akin to an automated typewriter or portable handheld calculator because like a automated typewriter or handheld calculator, it utilizes electronics to perform a basic function, in this case voice and text communication.

Fourth, Mr. Kramer contends that his case is different those cases where a traditional computer is used to entice victims using internet chat rooms, email and social networking sites. *See Lay* at 447. Mr. Kramer used what is now an ordinary communication device, a basic cell phone, to commit his crime and his case should be distinguished from those where more sophisticated means are used to entice a minor to engage in prohibited sexual conduct. Mr. Kramer's used his phone only to call his victim and send text messages. Mr. Kramer's use of a basic cell phone in this manner should be considered no different than use of an ordinary telephone to commit his crime.

## *The Remaining § 3553(a) Factors*

Mr. Kramer contends that a sentence of not more than 140 months is warranted when considering his history and characteristics.  *See* § 3553(a)(1).   People who know Mr. Kramer well express consistent support for him and emphasize his positive qualities.  His mother, Roberta M. Poindexter, expresses support for her son in a letter written to the Court which is attached hereto as Exhibit "A."  In her letter, Ms. Poindexter writes that her son grew up in his father's home, an environment she believes was unfavorable.  Despite this upbringing, she writes that her son is a hard worker, an excellent carpenter and willing to help people in need, as evidenced by his work to rebuild homes in New Orleans after Hurricane Katrina.  She expresses her impression that Mr. Kramer is truly sorry for his criminal conduct.

Mr. Ronald L. Smith, Chief of Police for the Brown City, Michigan Police Department, also writes to support Mr. Kramer in a letter which is attached hereto as Exhibit "B."  Chief Smith writes he has know Mr. Kramer for 40 years and like Ms. Poindexter, writes that Mr. Kramer's youth was spent in "not the most favorable atmosphere for any young man or woman to grow up in."  Chief Smith believes that with encouragement, Mr. Kramer would be an asset to society.  He also writes of Mr. Kramer's skill as a carpenter.

Similarly, Mr. Gilbert E. Harrison, owner of the business, Harrison Structural Moving and Mr. Kramer's former boss, writes to support Mr. Kramer in a letter which is attached hereto as Exhibit "C."  Mr. Harrison, who has known Mr. Kramer for ten years, writes that he employed Mr. Kramer for two years and that Mr. Kramer is "hardworking, a problem-solver, and follows instructions."   According to Mr. Harrison, Mr. Kramer has a "cheerful personality and a good sense of humor" and works hard to maintain a relationship with his children.

Mr. Kramer's brother, Robert E. Kramer, also writes to support his brother in a letter that is attached hereto as Exhibit "D." Robert Kramer writes that Mr. Kramer is a "very hard worker, a good person, and has a very big heart." Robert Kramer, owner of a small design business in Helendale, California, expresses that upon Mr. Kramer's release from prison, he will provide his brother with employment and a place to live.

Significantly, Mr. Walter J. Cure III, in a hand-written letter, writes to support Mr. Kramer in light of Mr. Kramer's work to rebuild Mr. Cure's Violet, Louisiana home after it was devastated by Hurricane Katrina. Mr. Cure's letter is attached hereto as Exhibit "E." Mr. Cure holds Mr. Kramer in such high regard that he would be proud to call Mr. Kramer one of his own children. Mr. Cure writes that Mr. Kramer helped to rebuild his home after Hurricane Katrina, working "fast and would not do anything if it was not the correct way." He writes that Mr. Kramer was there everyday to work and worked long hours to repair his home.

## CONCLUSION

Considering all of the statutory sentencing factors listed in § 3553(a), Mr. Kramer believes a sentence of not more than 140 months is sufficient, but not greater than necessary to comply with the factors.

Respectfully submitted,

*/s/ Michelle M. Law*
**MICHELLE M. LAW, #45487**
Assistant Federal Public Defender
901 St. Louis Street, Suite 801
Springfield, Missouri 65806
(417) 873-9022
Attorney for Defendant

April 19, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2010, the foregoing document was electronically filed with the Clerk of the Court, and a copy was served on Mr. James J. Kelleherr, Assistant United States Attorney, 901 St. Louis, Ste. 500, Springfield, Missouri 65806.

>           */s/ Michelle M. Law*
>           **MICHELLE M. LAW**